Abner Hoge, John Dowlin, Daniel W. Braden, David A. Spragg, Samuel Montgomery, Josiah Ingram and William T. Lantz, trading and doing business as the Huffman Farm Co.,*v.* John R. Rush and William T. Lantz, Appellants.

*Partnership—Payment to partner—Joint purchasers.*

Any one of several copartners has the right to receive money payable to the partnership, and such payment discharges the debtor.

Where the managing partner of a copartnership, with the full knowledge and consent of his associates, makes a sale of a portion of the partnership property to himself and another person as joint purchasers, a payment of a portion of the purchase money by such other person to the managing partner is a payment to the partnership. In such a case no antagonistic interest is created by the managing partner's receipt of a debt due the partnership, inasmuch as it is to the interest of the partnership to receive money due from a debtor, no matter whom ; and the fact that the managing partner, who is known to be solvent at the time, does not immediately pay over the money to the partnership, does not deprive the other joint purchaser of his right to be credited with the amount paid by him.

Where one of two joint purchasers from a partnership is also a member of the partnership, the other joint purchaser is individually liable to the partnership for the whole amount of the purchase money. The half of the debt due by his associate is not, in contemplation of law, paid by reason of the associate being a member of the partnership.

*Partnership—Actions—Parties—Act of April* 14, 1838.

Under the act of April 14, 1838, P. L. 457, a partnership may bring an action against two joint purchasers of the firm's goods, although one of the purchasers is a member of the partnership.

Argued Oct. 31, 1895.    Appeal, No. 168, Oct. T., 1895, by defendants, from judgment of C. P. No. 3, Allegheny County, Aug. T., 1891, No. 168, on verdict for plaintiffs.    Before STERRETT, C. J., GREEN, WILLIAMS, McCOLLUM, MITCHELL, DEAN and FELL, JJ.    Reversed.

Assumpsit for goods sold and delivered.    Before PORTER, J. The facts appear by the opinion of the Supreme Court.

The court charged in part as follows :

[There is, gentlemen, in the case, evidence, the weight of which, if it were of any avail, would be for you, that Mr. Rush made payments to Mr. Lantz after these cattle had passed into their possession.    He claims that those payments were made because he bought the individual half for $3,500, and that there was no joint liability on his part with Lantz for the whole lot ; that this was simply a transaction between him and the firm, and that he was afterwards told by Lantz that he, Lantz, had bought the other half.    If that were the case, then, under such circumstances, it would be a good payment for Rush to pay Lantz, because he would not be paying him a part of a claim for which they were jointly liable.    But if you find that the contract of sale was a joint one to Lantz and Rush for $7,000, entered into by them, that would put Lantz in such a position with regard to his other partners, and with regard to Rush, Rush having knowledge of the facts, as to make a payment by Rush, the man who was jointly liable with Lantz, for the whole amount, to Lantz, as not a proper credit upon the claim of the firm, because the circumstances would negative any authority to Lantz to act for his other partners in the firm generally with regard to this property.

If you find that the sale was to them jointly, then each of them would be liable for the whole amount ; that is, together jointly liable for the whole amount, and payment by one to the other would not be a good payment as against the firm.    If, therefore, gentlemen, under the evidence in this case, you find this sale to have been one made to these men upon their joint undertaking, we say to you that there is no evidence in the case which would warrant you in finding that the amount has been paid.]    [1]

[You simply, then, pass upon one question : Was this a sale

to these defendants jointly? If it was, then the plaintiffs are entitled to a verdict of $7,000, with interest from the time the amount became due.] [2]

[If at the time this sale was made there was an agreement among all of them that a certain sum should be credited, then that would have been a proper credit; in other words, if at the time they made this sale there was an agreement that the amount should be decreased or diminished by the amount of the bill which Rush held against them, then that would have been a proper credit. But, under the pleadings in this case, gentlemen, and the affidavits as filed, the feed bill is not to be considered by you. It is not properly set forth as an item of defense in the affidavits filed by the defendants.] [3]

Defendants' points were, among others, as follows :

3. There being no evidence that a partnership existed between defendants, Rush and Lantz, in respect to said property, the present action cannot be maintained under the act of April 14, 1838, and the verdict must be for the defendants. *Answer :* This point is refused. [4]

4. That under the pleadings and evidence in this case the verdict must be for the defendants. *Answer :* This point is refused. There are questions of fact upon which the jury must pass. [5]

Verdict and judgment for plaintiffs for $10,872.16. Defendants appealed.

*Errors assigned* were (1–5) above instructions, quoting them.

*D. F. Patterson* and *T. C. Lazear, J. M. Garrison* with them, for appellants.—If a debt is owing to a firm, payment by the debtor to any one partner extinguishes the claim of all, each partner being ostensibly the agent of the firm to receive such debts : Parsons on Partnership, sec. 297 ; King v. Smith, 4 C. & P. 108 ; Porter v. Taylor, 6 M. & S. 156 ; Clement Bates on Partnership, sec. 326 ; Noyes v. New Haven R. R. Co., 30 Conn. 1.

The whole of the purchase money is to be treated as paid : Griffith v. Chew, 8 S. & R. 17 ; Grayble v. York, etc., 10 S. & R. 268 ; Highland Turnpike Co. v. McKean, 11 Johns. (N. Y.) 98 ; Linsen Bigler v. Gourley, 56 Pa. 166 ; Metz's App., 11

S. & R. 203; Simon v. Albright, 12 S. & R. 429; Eichelberger v. Morris, 6 Watts, 42.

Under the plea of payment, evidence of payment in goods, or other things than money, is good: Hamilton v. Moore, 4 W. & S. 570; Richabaugh v. Dugan, 7 Pa. 394.

The act of 1838 does not apply to this case: Scott v. Gunnison et al., 4 Brewster, 101; Troubat & Haly, sec. 2147; Tassey v. Church, 6 W. & S. 465; Pennock v. Swayne, 6 W. & S. 239; Hepburn v. Curtis, 7 Watts, 300; Brady v. Calhoun, 1 Penrose & Watts, 140; Galbreath v. Moore, 2 Watts, 86; Schaffer v. Fowler, 111 Pa. 451; 17 Am. & Eng. Ency. of Law, 859; Lindley on Partnership, 51; Putman v. Wise, 1 Hill, 239; Quachenbaush v. Sawyer, 54 Cal. 439; Hawes v. Tillinghaust, 1 Gray, 289; Bocklin v. Hardenburgh, 37 N. Y. Supr. 110.

*F. P. Iams*, *C. C. Brock* and *Sol Schoyer, Jr.*, with him, for appellees.—The payment by Rush to Lantz was a mispayment: Goldbeck v. Kensington, 147 Pa. 267; Nelson v. Tumlin, 74 Ga. 171; Mechem on Agency, sec. 66.

The plaintiff partnership had a perfect right to make the sale in question to Rush and Lantz, one of its members, and Lantz and Rush had a perfect right to purchase the property with the full knowledge and consent of Lantz's copartners.   But when the several parties in the transaction agree to it, after full knowledge and information, neither the parties plaintiff nor the parties defendant had a right thereafter to set up Lantz's position in the partnership for the purpose of affecting the rights of either party under the contract entered into by them: Burke v. Bours, 98 Cal. 173; Finch v. Conrade, 154 Pa. 326; Merchants National Bank of Philadelphia v. Goodman et al., 109 Pa. 422; Wagner & Bros. v. Crook, 167 Pa. 259.

This case is within the act of 1838, P. L. 457: Grubb v. Cottrell, 62 Pa. 23; Price v. Spencer, 7 Phila. 181.

The fact that the evidence as to the feed bill was admitted without objection did not take away the power of the court to limit the effect of the evidence in its instructions to the jury, or to withdraw it from the jury, if admitted improperly: Lovegrove & Co. v. Christman, 164 Pa. 390; Carpet Company v. Latimer, 165 Pa. 617.

OPINION BY Mr. JUSTICE DEAN, January 20, 1896 :

The Huffman Farm Company, plaintiff, was a partnership organized in 1884, in Greene county, Pennsylvania, to carry on the business of farming and stock raising in Nebraska; they then purchased land in the last named state, and cattle wherewith to stock it; the partners were six in number, among them William T. Lantz, who was cashier of a bank in Waynesburg, Greene county. In July, 1885, John R. Rush had a bill of $650 against the partnership for feeding the cattle the first winter; for this, he was pressing Lantz, who seemed to be the active member of the partnership, for payment; Lantz proposed to sell the cattle to him for $8,000, and credit the bill on the purchase money; Rush declined to buy the whole stock at any price, but agreed to purchase and did purchase a half interest, estimating the entire value at $7,000, and the half at $3,500, he to receive a credit of $500 in payment of his bill; his dealings were principally with Lantz, who acted for the partnership, and to him he paid the purchase money; at the time of the Rush purchase, Lantz bought the other half interest in the cattle from the partnership, thus making himself and Rush the owners of the whole. The weight of the testimony seems to show the sale to Lantz and Rush was, so far as concerned the partnership, intended to be a joint one; the partners thought Lantz and Rush were joint purchasers of the cattle; whether Rush so intended, is at least doubtful. There was little dispute as to the fact that Rush had paid the full half of the purchase money to Lantz as a member of the partnership; four or five years afterwards, Lantz became insolvent. The plaintiffs, averring Lantz and Rush to be joint purchasers, and that Lantz had not accounted to his copartners for any part of the purchase money, brought suit against them jointly in assumpsit for the whole $7,000. Rush filed affidavit of defense, denying his purchase was a joint one with Lantz, and averred that his was a separate, independent transaction, whereby he purchased from the partnership, through Lantz, a partner, the undivided half interest for $3,500, and had paid the plaintiffs, through Lantz, in full for the same.

At the trial the court instructed the jury: 1. That if they found from the weight of the evidence Rush's purchase was an independent or individual purchase of the one half interest from the partnership, and that he had paid to Lantz, as one of the

partners, the purchase money, there could be no recovery against him. But,

2. If the purchase were a joint one of the whole stock, then payment to his copurchaser, Lantz, although the latter was one of the vendor partners, was a mispayment, and as a joint purchaser he was still liable for the whole.

Under this instruction, the jury found for plaintiffs the sum of $10,672.17, being the $7,000 with interest from date of purchase; and from judgment entered on the verdict Rush now appeals, assigning for error the instruction of the court.

The following is the language of the instruction complained of:

" But if you find the contract of sale was a joint one to Lantz and Rush for $7,000 entered into by them, and that the property was delivered to them, that would put Lantz in such a position with regard to his other partners and with regard to Rush, Rush having knowledge of the facts, as to make a payment by Rush, the man who was jointly liable with Lantz for the whole amount, to Lantz, as not a proper credit upon the claim of the firm, because the circumstances would negative any authority of Lantz to act for his other partners in the firm generally with regard to this property.

" If you find that the sale was to them jointly, then each of them would be liable for the whole amount, that is, together jointly liable for the whole amount, and payment by one to the other would not be a good payment as against the firm. If therefore, gentlemen, under the evidence in this case, you find this sale to have been one made to these men upon their joint undertaking, we say to you that there is no evidence in the case which would warrant you in finding that the amount has been paid." The court excluded as a payment the $500 feed bill, because, under the rules, it had not been pleaded as an offset.

The language quoted is complained of as error; is the complaint well founded?

The liability of defendant as a joint promisor with Lantz depended on whether the purchase was a joint one. On this, as already noticed, there was conflicting testimony, and the jury have found they were joint purchasers of the cattle; therefore, if no money had been paid by Rush, as between him and the partnership, he would have been liable for the whole amount.

But it is not disputed he paid Lantz, not including the $500 feed bill, $3,000, which as between him and Lantz, his copurchaser, was his share of the purchase money. The question then is, not as to his liability on the original express or implied joint promise, but whether, as between him and the partnership, he has by the payment of $3,000 to Lantz discharged the debt to that amount, as against himself.

It is not questioned that Lantz was one of the partners who owned the cattle; nor do we think it can be questioned that the deal was really negotiated through him, he acting for all the partners with their express or implied consent, he first fixing the price and terms of payment. Montgomery, one of the plaintiffs, when called into the bank where the sale was consummated, to hear the terms of it, says that the sale had been then agreed upon, and no writing was drawn up, although time was to be given; the whole negotiation had been conducted by Lantz; the partners met, among them Lantz, and all verbally assented to it; to quote the words of the witness: " It was a kind of contract in honor; we all had confidence in one another at that time." Dr. Braden, another of the partners, testified, the land company had no officers and no treasurer, and no one was specially designated as the treasurer, but the business was principally done by Lantz; then these questions were put to him: " Q. Well, in reference to the partnership, who was the active member, if any one was more active than another? A. Well, I would say that Mr. Lantz was the active financial member of the firm. Q. Did you ever know of anything of importance being done by the firm without his consultation and advice? A. No, I never did. . . . Q. Well, then the active man in Pennsylvania in the management of the interests of this partnership was Spragg, wasn't it? A. No, Lantz was at the head of the matter, and no one did anything except that they had first consulted with Lantz about it." Then in connection with this testimony is that of Rush that Lantz was the business man of the company, as he understood, and at the time he purchased the cattle and paid for them Lantz was solvent and cashier of a bank. Then Lantz testifies that Rush stated to Hoge, another of the partners in Lantz's presence, that he, Rush, had bought a half interest in the cattle, and that a feed bill of $500 due Rush was to be credited on the price. Lantz

asked Hoge if he was satisfied and Hoge said to Rush that whatever Lantz did was all right.

We notice only part of the testimony on this subject, tending to show the formal assent of the copartners and the relation of Lantz to the partnership; if believed, it shows he was the active manager and director of the business; he had the full confidence of his copartners, and not only had he the authority implied from his membership, but he had more responsible duties than these imposed upon him; he was in fact, by their consent, the business head and treasurer of the partnership. Nor is there any evidence that this confidence of his copartners was withdrawn until after his insolvency in 1891. Another fact possessing significance in this connection is that the sale was made the 14th of July, 1885, the money to be paid in a few months, yet suit is not brought against Rush until 1st of July, 1891, almost six years afterwards; no settlement of accounts of the partnership between Lantz and his copartners was ever had; the appellant might well ask, Was this because the other members trusted their copartner as a partner, during his solvency, and only sought recovery by suit from his copurchaser, when collection from Lantz, their partner, was hopeless?

If, as is the law, any one of several copartners has the right to receive money payable to the partnership, and such payment discharges the debtor, why does not Rush's payment of the $3,000 to Lantz discharge that much of the debt incurred by him in the joint purchase? Take the verdict of the jury as establishing the fact of a joint purchase, that did not create an antagonism between Lantz and the partnership which would divest him of his implied authority as a partner to receive money due the partnership; he could do nothing to mitigate the terms of the joint promise, for that would antagonize the partnership, but he could acquiesce in and receive a payment from his copurchaser, according to its terms, of money due the partnership, when Rush handed to him, as one of the vendors, $3,000 on the purchase, the fact that a balance still remained unpaid, which, as between the purchasers, was in equity due from him, Lantz, did not disqualify Lantz from receiving what was due from a third person, Rush, for it was to the interest of the partnership to receive money due from a debtor, no matter whom, and Rush must pay to some one of them. It will be

noticed that at this time Lantz was entirely solvent, the partnership was still in existence, and he was the same active prominent member of it, fully trusted by his copartners. True, the general rule is that it is against public policy to permit an agent, without the full knowledge and consent of his principal, to enter into relations adverse to his principal's interest, or where his own personal interests would be antagonistic to those of his principal. But no antagonistic interest was created by the partner's receipt of a debt due the partnership creditor, because it replenished the partnership funds to that amount. Nor does the fact that the money was not paid over to the other partners by Lantz affect the right to receive it; at that date, there was no more certainty that any one of the others would account for and pay over the money than that Lantz would; all were solvent; his failure afterwards, and inability to account for and pay over this money, was no more prejudicial to his copartners than would have been his failure to pay any other money received by him; this shortcoming sprang, not from an antagonistic interest created by the joint contract, made with full consent of all the partners, but from a want of fidelity to duty as a partner, wholly independent of the contract. Nor did the receipt of the money affect the contract liability of the joint promisors, for each still stood bound for all that remains unpaid, and in addition Lantz was bound to account for the $3,000 he had received. The only effect of the payment to the partner was to discharge the joint debtors as purchasers to the amount of $3,000 from their joint liability; and they ought to be discharged from this, for, in contemplation of law the creditor— the partnership—got the money.

We know of no case which holds that a copartner cannot receive money from a stranger to the partnership, and give acquittance of a partnership debt, because he happens to be jointly interested in the contract to pay. A partner is more than a mere agent; the latter's authority is determined by the terms of his appointment, the former's by the partnership relation and the nature of the business. All the cases cited by the learned counsel for appellees bear on the authority of a mere agent to assume relations antagonistic to his principal. We concede that if the transaction were collusive between Lantz and Rush to defraud the partnership, the payment would not discharge

Rush; and if Lantz had not been an active manager of the business, with the consent of his copartners, this fact might be some evidence of collusion, but there is no evidence tending to show want of good faith in the payments.

We think, therefore, the learned judge of the court below fell into error when he instructed the jury that Rush's payment to Lantz was a mispayment, from the mere fact that Lantz was his copromisor in the contract. The jury should have been instructed that if the payment was made in good faith by Rush to Lantz, because he was a member of the partnership and had, ostensibly, authority to receive the money, such payment operated as a discharge of the debt, as against Rush, to the amount of the payment, and fixed Lantz's liability to account for it as a copartner.

The second assignment of error is without merit. It is argued that as Rush's half was actually paid to the partnership, Lantz being solvent and a partner contracting with his own firm, they thereby accepted him as a partner for the other half of the money, which it was his duty to pay to himself, therefore, in contemplation of law, the partnership also received that money, and Rush owes nothing. In other words, as soon as the contract was made, Lantz's half of the price was paid, because he was a member of the firm with whom he contracted; or to go further, every debt, whether evidenced by note, bond or verbal promise, payable by a partner individually to the partnership of which he is a member, is paid as soon as contracted, because of his implied authority as a copartner to receive money due the partnership. The trouble with this argument is that Lantz's contract according to the verdict was that he jointly with Rush in a few months would pay the Huffman Farm Company $7,000. The only method of discharging that obligation was by payment to the Farm Company, according to the contract, the money; Rush actually paid him, as a representative of the company, $3,000; Lantz has actually paid nobody anything, nor has there been any change in his contract relations with the company, except that Rush's indebtedness is reduced to the amount of his payment; there is nothing to put in operation any principle of law, outside the law of the contract, which leaves him still a debtor. The cases cited, Bowman's Appeal, 62 Pa. 166, and others, deciding that the appointment by a de-

cedent of his debtor as executor is a discharge of the obligation, and the amount, by operation of law, becomes an asset of the estate, have no application, because the relation of debtor and creditor in such cases is changed by the death of the creditor, the debtor thereby becoming his representative ; by operation of law the contract is at an end ; the debt is paid and becomes an asset. If there had been a dissolution of the partnership and Lantz had been appointed receiver, then, under the principle cited, Lantz would, probably, have been paid the partnership debt by operation of law, and he would have been accountable as receiver for the amount, as an asset. But here there was no change from his situation as a debtor under his contract to that of representative of his creditor.

As the case must go back for retrial, any defect in the pleadings which excluded consideration of the $500 feed bill can be cured by amendment; therefore we will not further notice the third assignment.

As to the fourth assignment, we think a reasonable construction of the act of April 14, 1838, P. L. 457, to effect its manifest intent, would bring this suit within its provisions.

The fifth assignment, which complains of the refusal of the court to peremptorily direct a verdict for defendant, has been in effect overruled by what we said on the first and second assignments.

The judgment is reversed and a v. f. d. n. awarded.