ANTONIO GRECO

VS

MAMIE CHRISTINE, *Willie V. Piazza* Appellant.

No. 7656.

December 22d, 1919.

Willie V. [redacted]

CHARLES F. CLAIBORNE, JUDGE

Plaintiff alleged that he had leased to the defendant, a resident of the City of New Orleans, the property No. 315 Franklin Street in the City of New Orleans; and that there was due to him for rent $821 with interest and attorney's fees; that he feared that the defendant would remove the contents of the leased premises; he therefore prayed for a provisional seizure and for judgment for $821 with interest and attorney's fees. An order for a provisional seizure issued as prayed for, and the sheriff seized the furniture contained in the leased premises. The defendant released the seizure, furnishing a bond for the sum of Three Hundred Dollars with Willie V. Piazza as surety. The defendant was cited personally, and filed an answer on November 8th, 1917. On January 10th, 1919, the plaintiff represented that after joining issue the defendant died in New Orleans in July 1918, that her succession had never been opened, that she left no heirs present or represented, and that it was necessary to appoint an attorney at law contradictorily with whom the proceedings herein might be carried on. Without any proof of the allegations, the Court appointed Meyer S. Dreyfous "to represent the Succession and legal representatives of the deceased, Marie Christine, defendant".

The case was regularly posted and fixed for trial and judgment rendered for plaintiff on March 11th, 1919. On the suggestion of the attorney for defendant that his client, Marie Christine, had died in the City of New Orleans since July 18th, 1918, the Court granted a new trial, - and fixed the case for trial for April 3rd, 1919. On that day the counsel for plaintiff and the attorney appointed by the Court to represent the Succession were present, and the case was tried and submitted. On April 9th, 1919 judgment was rendered "in favor of the plaintiff, Antonio Greco, and against the defendant, Marie Christine, in the

165

full sum of Eight Hundred and Twenty-one Dollars" with interest and attorney's fees.

On April 17th, the plaintiff took the following rule against the surety:

"On motion of Antonio Greco, plaintiff herein, and on suggesting to the Court x x x that during the pendency of this suit the property seized was delivered to defendant upon her furnishing a forthcoming bond with one Willie V. Piazza, femme sole, as surety; that said Willie V. Piazza should be ordered to return the property seized in this case to the custody of the Sheriff, and in default of her so doing that judgment should be rendered in favor of plaintiff and against said Willie V. Piazza for the same amount for which plaintiff recovered judgment; It is ordered by the Court that Willie V. Piazza, femme sole, a resident of this City, do within twenty-four hours of the service of this rule, deliver to the Civil Sheriff the property provisionally seized herein and released under the forthcoming bond, and in default of her so doing, that said Willie V. Piazza show cause on Friday, April 25th, 1919 at 11 A. M. why judgment should not be rendered in favor of plaintiff and against said Willie V. Piazza in the same amount for which plaintiff recovered judgment herein against the defendant, to-wit: the sum of Eight Hundred and Twenty-one Dollars, ($821.00) with legal interest thereon from July 15th, 1917 and ten per cent attorney's fees on said principal and interest, all costs of suit and of these proceedings".

Willie V. Piazza answered the rule in writing and alleged:

1o That the proceeding by rule was illegal; this was not pressed on the argument of the case.

2o That there was no legal judgment against the defendant which was an essential requisite before proceedings could be taken against the surety, for the reason that the defendant, Marie Christine Russel, died in this City on July 13th, 1918, and that the judgment herein taken again the latter subsequently was illegal, null and void.

The District Court, on the authority of Bussey vs. Nelson, 30 A., 25, overruled defendant's objections and on May 1st, 1919 rendered judgment against the surety for the amount prayed for, $821, with interest and attorney's fees.

From this judgment the surety, Willie V. Piazza, on May 8th, 1919, took the present appeal.

On June 4th, 1919, with the consent of "Meyer S.Dreyfous, Curator ad hoc", the judgment rendered on May 1st (April 9) 1919 was corrected by interlining therein the words "Succession of" before the name of the defendant, so as to make the judgment read against the "Succession of Mamie Christine" instead of against "Mamie Christine".

The defendant complains of two errors in the judgment, viz:

1o  That the judgment was rendered against Mamie Christine after her death without making her heirs parties and without opening her succession and making the administrator a party and that such a judgment is a nullity; and

2o  That a judgment for $821.00 was rendered against the surety, Willie Piazza, who had signed a bond for only $300.00.

The Code of Practice contains the following provisions:

Art. 21:  "Actions do not abate by the death of one of the parties after answer filed".

Art. 120.  "If one against whom there was a cause of action die, leaving one heir only, the suit shall be carried on against such heir as it would have been against the deceased.  If the suit had already been brought against the deceased, and he had not answered, it shall not be interrupted, but shall be continued against the heir by a mere citation or notice, served on him to that effect, within the delay for original citations, according as the distance may be from his domicile to the court where the action has been brought.  If on the contrary, the deceased have two or more heirs, the plaintiff shall proceed personally against each of them for the share of which he inherits, if that share be sufficiently known and ascertained by an inventory or partition; otherwise they can only be sued, each for a virile portion, that is to say, for

167

an equal part of the debt, dividing it in as many parts as there are heirs. If the suit had been already commenced against the deceased, it shall be continued against his several heirs by citing each of them separately as if there was only one, but judgment can only be given personally against each for his hereditary share, or virile portion, as above provided".

Article 361: "If after issue joined either the plaintiff or defendant die, it is not necessary to recommence the action; it continues between the surviving party and the heirs of the one deceased, pursuant to the provisions enacted in the first part of this Code".

C. C., 1113 (1105) provides: "When any one dies leaving a vacant succession or heirs absent from and not represented in the State, all actions which could have been brought against the deceased, must be commenced or cumulated, and prosecuted before the Judge of the place where the Succession is opened, and brought against the curator appointed by the Judge, as is hereinafter prescribed".

The facts of the case of Bussy & Co. vs. Nelson, 30 A., 25 differ materially from the facts of the instant case. In the Bussy case the plaintiffs sued Nelson, a resident of Indiana, by attachment in the Fourth District Court and seized a lot of staves, *which the defendant funded.* Nelson answered the suit. He afterwards died in Indiana where his Succession was opened. The plaintiffs then filed a petition in the Second District Court, or *Probate* Court, in which they alleged "that they knew of no property or succession of Nelson in this State, and prayed the Court to appoint a suitable person to represent S. C. Nelson, deceased and his heirs, if any he has, and to appear and defend the suit. Whereupon the Second Court made the appointment in these words: Let J. V. Rozier, Esq. be appointed to represent Samuel C. Nelson deceased and his heirs, if any he has, and to defend them in this suit". Rozier excepted that the Second District Court had no authority to make the appointment nor had the Fourth District Court any further jurisdiction to proceed against the deceased. The Supreme Court thus states the point at issue: "The question for solution is, had

168

the Second Court the power to appoint a person to represent
the deceased or his heirs in the suit pending in the Fourth
Court, or should the latter Court have made the appointment"?
As to the exception to the jurisdiction of the Fourth District
Court after the death of Nelson the Supreme Court merely said
that they had decided in Augustin vs. Avila, 29 A., 837, that a
suit pending in one of the Courts of the City of New Orleans
did "not abate by the death of one of the parties, nor did the
death of a defendant in such suit compel its transfer to the
Second (District or Probate) Court, but that it remains within
the jurisdiction of the Court where it was instituted, and only
awaits the representative of the Succession of the deceased to
be made a party in order to proceed in its trial". As to the
authority of the Second District Court to make the appointment,
the Court said, that there was no property of the deceased in
the State nor any Succession to open; that it was therefore not
a curator to a succession that was desired, but a curator ad hoc
to "a non-resident defendant whose property had been attached and
who had appeared and answered and died during the pendency of
the suit at his foreign domicile where his succession was opened",
leaving no succession to open in this State. The Court finally
said: "Under the state of facts as alleged, the Fourth Court,
which had jurisdiction of the suit at its inception, did not
lose it by the death of one of the defendants, and alone had the
authority to appoint a curator to represent the heirs of that
defendant in that suit, there being no succession opened or to
be opened in this State, and no means being provided to bring
the foreign representative of the foreign succession before our
Courts. The judgment was therefore rendered contradictorily
with one not authorized to represent the parties, and must be
annulled".

No one of the Articles 21, 120 or 361 of the Code of
Practice or 1113 of the Civil Code was quoted in the opinion.

If we should follow plaintiff in his argument and
pleadings, and in his conclusions of this opinion, the law
would then read that upon the death of a resident defendant,

after answer filed, the judge shall appoint a curator ad hoc *and legal representatives of the* to the Succession of the deceased or to his heirs, without knowing whether *there are any* he has left any and without naming them, contradictorily with which judgment shall be rendered against the Succession of the deceased defendant. We are sure that the law does not read that way and we do not interpret the decision in the 30th. A., 25 as containing any such meaning. We understand that the Court held in that case that there was and could be no succession of the deceased Nelson in this State for the two reasons that he did not reside in this State and had left no property here, and that his Succession had been opened in his home in Indiana, and that his heirs, if he had left any, and the representative of his Succession, resided in Indiana, and there was no other means of reaching them except by the appointment of a curator ad hoc as in cases of attachment against foreign defendants. But the decision does not justify the conclusion that when a defendant, a resident of this State, dies in this State, a plaintiff may *and his heirs* proceed to judgment against the Succession of the defendant by *simply* having a curator ad hoc appointed to the Succession *and* heirs *legal representative* of the deceased. In our opinion there is no warrant in the law for such a practice and no case has been quoted in which it has been done. As we understand the law, a suit can be continued against a resident defendant who dies after answer filed, only by making parties to the suit the heirs of the deceased defendant or the representative of his Succession by personal or domiciliary service if they reside in the State, or by appointment of a curator ad hoc if they reside out of the State, *or are minors, or this State unrepresented* — O.P., 116—964 C.C., 56-3 It is elementary that a judgment rendered for or against a dead person is a nullity. 2 A., 484; 8 A., 80; 9 A., 241; 10 A., 778; 23 A., 102; 29 A., 141; 33 A., 1013; 41 A., 885.

In the case of Mc Micken vs. Smith, 5 N.S., 427 (#30) the Court said:

"It appears that previous to the decision of the case in the District Court, on the death of one of the defendants being shown, it was ordered, "that Archibald Haraldson be appointed curator ad hoc to represent the interests of the defendant during the pendency of the

170

cuit. The curator ad hoc is the same person on whom the appeal was served. But we do not think the case of the appellant is made better by the disclosure of this fact. Our Code of Practice requires, that if the defendant should die after issue joined, his heir must be cited. This is what should have been done here, and until it was done judgment could not have been regularly given in the District Court against the Succession of the deceased".

In the case of Stith vs. Winbush, 3 La., 442, where the defendant died after judgment had been rendered, the Court said:

"According to these laws, when one of the parties to a suit dies after issue joined, it continues between the surviving party, and the heirs or representatives of the deceased. Code of Practice 361". 3 La., 526.

In the case of Mc Manus vs. West, 18 La., 41 where a curator ad hoc was appointed to a plaintiff who had died after issue joined, the Court said:

"It (plaintiff's death) however does not justify the appointment of a curator to his heirs. If they were within the State no curator could be appointed to them x x The appointment being irregular, all the posterior proceedings contradictorily with him are equally so".

In the Succession of Cunningham, 2 R., 443, it was decided that when the heirs of the deceased, or some of them, were present, no curator could be appointed to the Succession.

In Chartier vs. Police Jury, 9 A., 42, a curator ad hoc had been appointed to a plaintiff who had died after judgment rendered; the Court said:

"The cases in which curators ad hoc may be appointed by Courts to represent parties in suits, are enumerated and specially provided for by law. We are not prepared to say that this is one of the cases in which it may be done".

In Norton vs. Jamison, 23 A., 102 (104) the Court said: "If defendant die after issue joined, his heir should be cited; until this be done judgment cannot be given

171

against the Succession. 5 N.S. 431". 5 R. 508.

The case of Mc Closkey vs Wingfield, 29 A. 141, was a rule against Bush, surety on an attachment bond to make him pay the judgment. Judgment had been obtained against the defendant; but prior thereto the defendant had died. The Court Said:

> "The question is not merely as to the manner of enforcing judgment against the principal before pursuing the surety. It is as to the existence of judgment against the principal. The death of a partner dissolves the partnership. If this arises after answer filed, suit does not abate, but may be continued by making the heirs or legal representatives of the deceased partner parties to the suit. No valid judgment can be obtained otherwise, as held by us. This was done in the present case, and is an insuperable obstacle to the pursuit of the surety in the present attitude of the case".

Proceedings to sell the property of a defendant, after his death, without making his heirs or legal representatives parties are illegal. 41 A. 420; 31 A. 371; 22 A. 20; 5 A. 737; 5 R. 508.

The presumption is that a deceased did not die without either ascendants or descendants or collateral relations. 5 N.S. *1 H.D. 496 M27-Bus.5n.S. 668-6n.S.96-12m2 392-* 431. The counsel for the appellant stated upon the argument of *5a26s* the case that the deceased had left heirs in this City. *12a476*

We have therefore come to the conclusion that there is *6240* neither law nor jurisprudence authorizing a plaintiff, upon the *5a170* death of a defendant, a resident of this State, to cause the *3a£a708* pointment of an attorney or curator ad hoc to represent his succession; nor can a curator ad hoc be appointed to represent his heirs unless they are shown to be absentees, *or minors and insufficient.*

The rule against the defendant herein Willie A. Piazza is therefore discharged and the judgment against him reversed and avoided, *reserving to the plaintiff his rights against the Succession and Heirs of m annie* *Christine and against willie V. Piazza in* December 22d, 1919. *further proceedings —*

172

(IN RE; PIAZZA'S APPEAL)

ON REHEARING. **7656**

St. Paul, Judge.
*Syllabus:*

## OPINION.

St. Paul;

The facts herein are fully set forth in the former opinion on file. Briefly they are sa follows;

Plaintiff sued and seized for rent; defendant bonded the seizure, and appellant became suréty on the forthcoming bond. After issue thus (and otherwise) joined defendant died. Plaintiff by motion (unsworn) then suggested: the death of defendant; that her succession had not been opened; that there were no heirs present or represented. And thereupon the court appointed an attorney to represent "the succession and legal representatives of the deceased"; contradictorily with whom the proceedings were carried tó judgment. The appellant, when called upon to produce the bohded property, denied the validity of the judgment thus obtained, and thus raised the following issues, to-wit;

1. Can a curator-ad-hoc, or similar representative, be validly appointed (after issue joined) to the succession and heirs of a deceased defendant, where the court has under seizure property belonging to the deceased, and the presumptive heirs are unknown, or absent, or non sui juris?

2. Must negative proof be administered to show that such heirs are unknown, or absent; or will it suffice merely to suggest the fact, and rest upon the failure of the heirs to present themselves and "evindicate the property under seizure?

The jurisprudence seems to be fairly well settled, that
a plaintiff may, upon the death of a defendant after issue
joined, proceed to have a _curator-ad-hoc_, or other representative,
appointed to the succession and (presumptive) _heirs_ of the
deceased, if they be unknown, or absent, or _non sui juris_;
but it is not altogether clear (for want of the full facts in
each case) whether this right be, or be not, dependent upon
the court having some property belonging to the deceased
within its grasp, or immediately subject to its process. We
presently incline to believe, that (for constitutional reasons)
no judgment so rendered can effect persons or property not
already reached by the court's process; but _that_ question
does not arise on this appeal.

But where the court has under seizure property of the
deceased, or where property immediately subject to its process
is involved (as an immovable), then the jurisprudence is quite
clear that such an appointment may be made.

> Ball vs Crockett, 9 An 293
> Bussy vs Nelson, 30 An 25
> Theus vs Kemp, 49 An 1657
> Willis vs Ruddock Cypress Co, 108 La 256
> Tell vs Senac, 122 La 1039
> Abbott vs Pratt, 144 La 742

Indeed under such circumstances it is manifest that the
court must either make the appointment, or dismiss the proceedings,

or have the seized property or its revenues wasted, to the benefit of no one and the injury of all. Hence _this_ jurisprudence results _ex ipsa necessitate rei_; and is clearly _constitutional_.

## II.

We have therefore no doubt that under the circumstances of this case and the allegations of the motion asking the appointment, towit, that there were "no heirs present or represented", the appointment might validly be made, and our former opinion so recognizes.

In that opinion, however, following Whitney Bank vs Alfred, 17 Orleans App 223 (136 La 230) that, to warrant the appointment, _proof_ must be made of the facts alleged. But we now find that a later jurisprudence holds otherwise; and that suffices merely to _suggest_ the facts (negative in character) that there are _no_ known heirs present or represented, and this suggestion alone warrants the appointment until the heirs themselves appear.

Thus in Abbott vs Pratt, 144 La 742, it was held that the "_mere averment_", unsupported by affidavit, that a defendant was absent (i. e. _not_ in the State) sufficed to make a valid appointment. This _on rehearing_, after the court had just held that such absence (i. e. non-presence) must be affirmatively proved; and _in a case_ to compel acceptance of title, which _might_ perhaps have been set aside by proof that the defendant was in fact not an absentee (i. e. _was_ in the State) when the

176

appointment was made.

The court was therefore both deliberate and final in its conclusions; for its own former decree (still persisted in by the author thereof) was before it; and it must have realized that any future change in that jurisprudence might (would) be destructive of the very title it was then forcing upon a reluctant purchaser.

### III.

Of course appellant should not have been condemned for more than she had bound herself, towit, the amount of the forthcoming bond ($300); nor should interest have been allowed cept from the time she breached the condition of the bond, towit, by failing to produce the seized property when demanded of h. (April 20th 1919)

Our former decree is therefore set aside, and it is now ordered that the judgment appealed from be amended by reducing the amount allowed plaintiff in rule to Three hundred Dollars ($300), with legal interest from April 20th 1919; and as thus amended the judgment is affirmed; Costs of the rule and proceedings thereon in the court below to be paid by appellant, and costs of appeal to be paid by plaintiff.

New Orleans La, February. 9th 1920